IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND (Southern Division)

| | |
|---|---|
| LISA WILSON FOR B.A.W.P. | ) |
| 6705 Chapel Dale Road | ) |
| Bowie, Maryland 20720 | ) |
| Plaintiff, | ) |
| v. | ) |
| Prince George's County Public Schools, et al. | ) |
| Defendants. | ) |
| | ) |

Civil Action No.: 8:24-CV-01020-PX

## THE PLAINTIFF MOTION TO OPPOSITION TO DISMISS

For the purpose of this response, the Plaintiff is B.A.W.P.

**Standard of Review**

1. To withstand a challenge under Rule 12(b)(6), "a complaint must set forth factual content that allows the Court to draw the reasonable inference that the Defendant is liable for the misconduct alleged'" *Bowman v. Iddon,* 848 F. 3d 1034, 1039 (D.C. Cir. 2017) (quoting Ashcroft v Iqbal, 556 U.S. 662, 678 (2009)). A Court reviewing a motion to dismiss under Rule 12(b)(6) must "accept [] as true all of the factual allegations contained in the complaint and draw[] all interferences in favor of the nonmoving party." Author v. Pritzker, 740 F. 3d 176, 179 (D.C. Cir. 2014) (quotation marks omitted). Moreover, "[a] complaint survives a motion to dismiss even '[i]f there are two alternative explanations, one advanced by [the] Defendant and the other advanced by [the] plaintiff, both of which are plausible.'" *Banneker Ventures, LLC v. Graham,* 798 F. 3d 1119, 1129 (D.C. Cir 2015) (quoting Staff v Baca, 652 F.3d 1202, 1216 (9th Cir. 2011) (first bracket added)). Even if the Defendant believes that its version will "prove to be the true one...that does not

relieve Defendant [] of [its] obligation to respond to a complaint that states a plausible claim for relief, and to participate in discovery." *Id.*

2. The sole Plaintiff in this matter is a disabled minor identified as B.A.W.P. in all filings. LISA WILSON is the biological parent and sole caregiver of the disabled minor. The child cannot take action due to compounding disabilities. According to the Federal Rule of Civil Procedure 17 (c) (A), a general guardian Representative may sue or defend on behalf of a minor or an incompetent person. The Plaintiff, by way of a separate Motion, is requesting the appointment of counsel by the Court. Federal Rule of Civil Procedure 17 (2) establishes that a minor or incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem. The court must appoint a guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action.

3. This rule provides access to the court system for individuals who are denied legal capacity on ground of infancy or incompetency under state law. FRCP 17 (b). *State law governs the issue of capacity. However, state rules governing appointment of a guardian ad litem or next friend for a minor plaintiff that conflict with the federal rule need not be applied in federal court because they are merely procedural. See Werners, 557 F2d et 174 n 4.* The rule does not require the Court to appoint a guardian ad litem for every minor. The Court must be satisfied that the child gave permission for the suit and that the next friend is acting in good faith and in the child's best interest. Here, the parent is the educational advocate who has forfeited leave from the place of employment, finances for legal and professional advocacy, and personal resources for the well-being of the child. Since kindergarten, the parent attended nearly 30 IEP meetings to ensure the Defendant

complied with the laws governing special education. The parent is not seeking to recoup

the finances associated with historical and current advocacy efforts. The parent pursued

administrative remedies at the state level and successfully obtained nearly 500 hours of

compensatory service hours; however, Defendant failed to execute the vendor process for

the identified Providers. This nonaction rendered the 500 hours of compensatory service

hours moot. The parent is not party to the action and believes the child is entitled to

judicial review of the violative and harmful conduct of the Defendant, who receives

federal funding specifically for disabled students.

4. Plain reading of the Motion to Dismiss by the Defendant is an assault on the disabled

minor's constitutional rights. The Supreme Court has accorded extensive, though not full,

constitutional rights to minors. The Court has stated the "[c]onstitutional rights do not

mature and come into being magically only when one attains the state-defined age of

majority. Minors, as well as adults, are protected by the Constitution and possess

constitutional rights." *Planned Parenthood of Central Missouri v Danforth*, 428 US 52,

74 (1976). The parent did not file the instant action in forma pauperis or self-identify as a

Plaintiff. The informa pauperis filing was on behalf of the minor child, which the Court

approved. All filings and related documents state LISA WILSON FOR B.A.W.P., except

the Process Receipt and Return, which is not a filing. The Process Receipt Return is a

form titled U.S. Department of Justice, United States Marshals Service that requires a

signature of Attorney or other Originator requesting service on behalf of another party.

While the parent could have legally filed as a party to the instant civil action, she did not.

To state otherwise does not represent the truth. If the argument by the Defendant is to be

considered, then the unanimous decision by the United States Supreme Court in Luna

Perez v Sturgis Public Schools. 143 S. Ct. 859 (2023), would be extinguished. The

Motion to Dismiss represents a chilling effect by a Defendant charged with caring for the

most vulnerable population in Prince George's County, Maryland. The posture of the

Defendant is consistent with the recent ruling in 8:21-cv-03001-JRR by the Honorable

Judge Julie R. Rubin, who ruled in favor of the Disability Rights of Maryland. The

Defendant habitually demonstrates a propensity to interfere with the rights of disabled

children through strong-arm legal maneuvering. Local Rule 101 is not applicable as the

parent is not a party to the instant civil matter. The minor child is identified in all

documents as B.A.W.P., pursuant to Federal Rule of Civil Procedure 5.2. It is unknown

why Counsel would attempt to cast suspicion on an established Procedure. The Motion to

Dismiss should be denied in totality based on the Defendant misleading the Court.

5.  Counsel suggested Spencer, Bias, Farmer, Phillips, Malik, and Marston be dismissed

based on technical error. The Plaintiff requests the Court not to consider the error as fatal

and believes an amended Complaint will resolve all technical errors identified by

Counsel. For background purposes, the Complaint was filed in person on April 8, 2024,

with 12 summons and Process Receipt and Returns. The Plaintiff requested a copy of all

documents deposited on April 8, 2024, and was charged $12, according to the electronic

receipt. On April 9, 2024, Plaintiff received correspondence from Catherine M. Stalvas,

Clerk, by B. Ames, Deputy Clerk, with guidance to title all documents Wilson et al v.

House et al. with the case number. I did not use this labeling because I was not a party to

the civil action. On April 17, 2024, the Court directed the U.S. Marshal to effectuate

service of process on Defendants. The Plaintiff welcomed the granting of the Motion for

Leave to Proceed in forma pauperis; however, the original Process Receipt and Returns

(12) were completed and deposited with the Clerk's Office on April 8, 2024. It is
unknown why the 12 Process Receipt and Returns were not made known to the Court.
The Plaintiff again presented to the Clerk's Office on April 26, 2024, and deposited 12
Summons and 12 Process Receipt and Returns. (See Farmer Process Receipt and Return
Signed on April 26, 2024).

6.  On or about June 25, 2024, the Plaintiff received First Class Mail from the United States
Marshals Service, District of Maryland, titled Lisa Wilson for B.A.W.P. in handwritten
print. The envelope contained a singular Process Receipt and Return for Defendant
Cynthia Farmer with the type of process as Complaint-Summons and a "green card
returned with signature" with the following tracking number: 9590 9402 85803244 2804
00, processed by Rebecca Patten on June 10 and 17th, respectively. The second document
in the envelope was an image of a postal green card bearing the SENDERS information
only (U.S. Marshals Service). The caption error is regrettable due to a lack of legal
training; however, the record is clear that 12 Defendants are the subject of the instant
civil action. The Plaintiff enrolled in a PACER account, but the Complaint at issue and on
file is not viewable. Therefore, a full-throated rebuttal cannot be formulated. The Plaintiff
consistently identified 12 Defendants in every filing unambiguously. Plaintiff pleads for
the Court to grant the Motion for the Amended Complaint. Again, the Plaintiff presented
to the Clerk's Office on June 7, 2024, only to learn the documents still had not been
appropriately docketed. A time-stamped copy will be attached for the Court's review.
Also, on June 7, 2024, the Plaintiff was informed that the document on file was not
legible, but a copy of the illegible document was not provided for correction. The
Plaintiff did not know which document the clerk was referencing.

7. The Plaintiff enrolled in a PACER account, but the Complaint at issue is on file and is not viewable. It is unknown why all documents are visible, but the Complaint appears to be the issue that Counsel is singularly focused on. Therefore, a full-throated rebuttal cannot be formulated. The Plaintiff consistently identified 12 Defendants unambiguously in every filing. The Plaintiff retained a copy of the original Complaint, which does not reflect the filings by Counsel. The Plaintiff pleads for the Court to grant the Motion for the Amended Complaint. Based on the game of "whack-a-mole" between April 8, 2024, and June 7, 2024, should the Court grant the Motion to Dismiss, due consideration should be given to do so **without** prejudice.

8. The Civil Cover Sheet reflects the Basis of Jurisdiction and Cause of Action. The Plaintiff has two draft Complaints; both iterations reflect that the documents were completed. Every document presented by the Clerk was accompanied by court-issued written Instructions and adhered to with seriousness. It is implausible that the version of the Complaint is the version submitted by the Plaintiff. A review of the Civil Docket also demonstrates Jurisdiction. Counsel demonstrates a profound lack of candor before the Court through this filing, and the Motion to Dismiss should be denied in total.

9. A cause of action is synonymous with stating a claim. The Plaintiff's draft reflects the Americans with Disability Act, Individuals with Disabilities Educational Act, and the 1973 Rehabilitation Act, which are reflected in the Civil Cover Sheet. The claim is consistent with violations of the federal statutes listed under the Basis of Jurisdiction. For example, the Complaint states, "ongoing delays of accommodations." A delayed accommodation is recognized as a coherent claim. Damages are not recoverable under IDEA; however, the United States Supreme Court sent shock waves through every school

6

district in the nation when the unanimous decision was issued in Perez v. Sturgis (2023). The Defendant failed to comply with federal law and appears untethered from the legal mandate enveloping special education. While Plaintiff references IDEA, the filing documents are clear that the cause of action is inextricably linked to the Americans with Disabilities Act, as noted in the Civil Cover Sheet. A plain reading of the record reveals claims of denied/delayed services and accommodation are central to the Complaint. Counsel appears to minimize the Statement of Claim when the allegations have resulted in immense educational harm. Characterizing the allegations as "short phrases" is diminishing. The Amended Complaint would remedy the Counsel's characterization.

10. The Plaintiff demonstrated hand-delivering the documents to the Clerk's office on multiple occasions and has supporting documentation. In every instance, the Process Receipt and Return document reflected "individual" v "official" capacity. This is evidenced by the Process Receipt and Return document processed for CYNTHIA FARMER by Rebecca Patten in June 2024. The Plaintiff is confused by Counsel's gaslighting techniques. The plaintiff's oversights are noted, as the timestamps show the handwritten documents were rushed as the Clerk's Office was within minutes of closing. Moreover, I was instructed by the April 9, 2024, Correspondence demanding that documents **must** be sent to the Clerk's Office. The Plaintiff was never informed about the uploading feature on your website, which created a personal hardship.

## LEGAL FRAMEWORK

11. Title II of the ADA prohibits public entities, including public educational institutions, from discriminating based on disability in the provision of their "services, programs, or

activities." 42 U.S.C. §§ 12132. The phrase "service, program, or activity" includes anything a public entity does.

12. Both the ADA and the Rehabilitation Act require public entities, including public educational institutions, to provide, in all of their programs, services, and activities, a reasonable accommodation to individuals with disabilities. Plaintiff requests that Title II and Section 504 claims together because "the substantive standards for determining liability are the same." To state a claim under either the ADA or the RA, the Plaintiff must allege that he is a qualified individual with a disability, who was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination, by reason of his disability.

13. Section 504 is a federal law that prohibits any entity that receives federal financial assistance (such as grants or student loans) from discriminating against persons with disabilities. Title II of the Americans with Disabilities Act is a federal law that prohibits state and local governments (such as public school districts, public colleges and universities, and public libraries) from discriminating against persons with disabilities. In general, Section 504 and Title II nondiscrimination standards are the same, and in general, actions that violate Section 504 also violate Title II. However, where Title II requirements exceed Section 504 requirements, public school districts, colleges and universities, and libraries must also comply with the Title II requirements.

14. A person with a disability means a person with a physical or mental impairment that substantially limits a major life activity, has a record of such an impairment, or is regarded as having such an impairment. The determination of whether a student has a physical or mental impairment that substantially limits a major life activity (and therefore

has a disability) must be made on a case-by-case basis. In addition, when determining if someone meets the definition of a disability, the definition must be viewed to provide broad coverage of individuals.

15. All public school districts are covered by Section 504 and/or Title II – this includes public charter schools and magnet schools. All programs in a school or college are covered by Section 504 if the school district, college, or university receives federal financial assistance. Section 504 covers all the operations of a school or college that receives financial assistance, including academics, extracurricular activities, athletics, and other programs.

16. Looking first at the statutory language, Section 504 of the RA defines a "program or activity" quite broadly to include "all of the operations of" a state instrumentality. 29 U.S.C. § 794(b) (emphasis added). These terms' broad meaning is confirmed, calling them "all-encompassing." The ADA does not define "services, programs, or activities," but Congress recognized that Title II provides at least the same degree of protection as Section 504. The ADA should not be "construed to apply a lesser standard than the standards applied under [the RA]." 42 U.S.C. § 12201(a); see also McDonald, 62 F.3d at 94-95. Thus, the phrase "service, program, or activity" under Title II, like "program or activity" under Section 504, is "extremely broad in scope and includes anything a public entity does. "A public educational institution's special education, vision services, assistive technology, and extended school year services fit within this expansive definition, as it undoubtedly is something "a public entity does" and is one "of the operations" of the prison.

17. Public entities violate Title II when they fail to provide qualified individuals with disabilities an equal opportunity to participate in or benefit from their services, programs, or activities. 28 C.F.R. § 35.130(b)(i)-(iii). Discrimination under Title II includes using methods of administration that (i) have the effect of discriminating against qualified individuals on the basis of disability or (ii) have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities. *Id* § 35.130(b)(1)(2)(3). "The phrase 'criteria or methods of administration' refers to official written policies of the public entity and to the actual practices of the public entity." 28 C.F.R. pt. 35, app. B.

18. The Plaintiff sufficiently states a claim under Title II when it alleges that he (1) is a qualified individual with disabilities; (2) was denied the benefits of or otherwise discriminated against in a public entity's service, program, or activity; and (3) was subjected to such discrimination because of his disability.

19. To survive a motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a plausible claim to relief on its face. *Ashcroft v Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In determining whether a plaintiff has stated a plausible claim, the court must view the complaint in the light most favorable to the plaintiff and generally considers only the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record. *Doe v Univ. of the Scis.,* 961 F.3d 203, 208 (3d Cir. 2020). The original Complaint referenced denied and delayed services and accommodations. The statement

may be short, but the U.S. Supreme Court found the conduct intolerable. The Plaintiff

stated a claim upon relief may be granted.

**ARGUMENT**

20. Under the ADA, Defendant Prince George's County Public Schools et al. is obligated to

ensure that students with disabilities can equally participate in and benefit from its special

education, extended school year, compensatory services, vision, occupational therapy,

assistive technology, and speech programs. The Plaintiff plausibly alleges that

Defendants violated Title II and the ADA by the following:

A. Defendant Prince George's County Public Schools et al. has not satisfied this obligation.

B. Defendant Prince George's County Public Schools et al. failed to establish proper

oversight to ensure disabled students receive the full benefits and entitlements authorized

by law.

C. Defendant Prince George's County Public Schools et al. delayed the delivery of assistive

technology devices for more than 100 days.

D. Defendant Prince George's County Public Schools et al. failed to provide direct speech

services, resulting from an Independent Educational Evaluation recommendation.

E. Defendant Prince George's County Public Schools et al. failed to determine eligibility for

extended school year program within 45 days of the final day of school in years 2022,

2023, and 2024.

F. Defendant Prince George's County Public Schools et al. failed to reasonably calculate or

implement the Individual Educational Plans.

G. Defendant Prince George's County Public Schools et al. failed to establish special

education support to mitigate the 2022 diagnosis of dyslexia.

H. Defendant Prince George's County Public Schools et al. failed to provide digital access to the curriculum via assistive technology devices during the 2023-2024 extended school year program.

I. Defendant Prince George's County Public Schools et al. forced disabled students to perform written tasks while ignoring the diagnosis of dysgraphia and IEP guidance of 100% digital instruction.

J. Defendant Prince George's County Public Schools et al. failed to make scribe available to student as outlined in the IEP during the 2023-2024 school year, to include extended school year services.

K. Defendant Prince George's County Public Schools et al. failed to make contracted vision specialist available for IEP meeting after documenting such in IEP Meeting Notice.

L. Defendant Prince George's County Public Schools et al. denied and delayed Vision Assessment after receiving medical records, medical statements, and vision reports/recommendations from a Pediatric Ophthalmologist

M. Defendant Prince George's County Public Schools et al. failed to conduct an adequate Vision Assessment and make appropriate recommendations.

N. Defendant Prince George's County Public Schools et al. failed to initiate a Functional Behavioral Assessment during the 2023-2024 extended school year as agreed in the June 2024 IEP Team Meeting and IEP.

O. Defendant Prince George's County Public Schools et al. failed to notify parent of numerous absences of the Direct Support Aide rendering the student without such accommodation on multiple occasions during the 2023-2024 school year.

P. Defendant Prince George's County Public Schools et al. failed to provide communication journal.

Q. Defendant Prince George's County Public Schools et al. failed to supervise special education teachers, general education teachers, assistant principals, and principals responsible for the delivery of special education services.

21. The administrative policies limit parents of disabled students from full lawful participation in the Individual Educational Program Teams, participation in the drafting of Individual Educational Programs, contact with Direct Support Aides, parental classroom observations, and medical absences.

22. The Plaintiff asserts plausible claims against each of the Defendants, establishing violations of Title II. The Defendant's legal argument fails to demonstrate that the Complaint lacked cognizable claims or jurisdiction. The facts of this case can be assessed only after discovery and both parties' submission of evidence regarding the reasonableness of the denial of services and accommodations. For now, the only facts that matter are those that Plaintiff has alleged, considered in the light most favorable to it, and those facts are those that matter are those that plaintiff has alleged. The additional arguments have no merit.

23. [C]alling upon all government actors to respect the dignity of individuals with disabilities is entirely compatible with out Constitution's commitment to federalism, properly conceived." See Lane, 541 U.S. at 537 (Ginsburg, J., concurring). Congress enacted Title II to address pervasive discrimination against individuals with disabilities in the administration of state services and to enforce fundamental rights "like access to the courts." *Id.* at 522-25 (majority opinion).

## CONCLUSION

24. This Court should deny the Defendants' Motion.

Lisa Wilson Submitting for B.A.W.P

Lisa Wilson For B.A.W.P.

6705 Chapel Dale Road
Bowie, MD 20720
Cell phone: 219.298.9798
zanderblake2014@gmail.com